IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VOLKSWAGEN AG, VOLKSWAGEN GROUP OF AMERICA, INC., and AUDI AG,<br><br>Plaintiffs,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>Defendants. | Case No. 18-cv-06611 |

**COMPLAINT**

Plaintiffs Volkswagen AG and Volkswagen Group of America, Inc. (together, "Volkswagen") and Audi AG ("Audi"), (collectively, "Plaintiffs") hereby bring the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and allege as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at

least the fully interactive, commercial Internet stores operating under the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products using counterfeit versions of Plaintiffs' trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products using counterfeit versions of Plaintiffs' federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of Illinois.

## II.  INTRODUCTION

3.     This action has been filed by Plaintiffs to combat online counterfeiters who trade upon Plaintiffs' reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit products, including vehicle parts and accessories, using counterfeit versions of Plaintiffs' federally registered trademarks (the "Counterfeit Products"). The Defendants create the Defendant Internet Stores by the dozens and design them to appear to be selling genuine Plaintiffs' products, while actually selling Counterfeit Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Counterfeit Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiffs are forced to file this action to combat Defendants'

counterfeiting of their registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Plaintiffs have been and continue to be irreparably damaged through consumer confusion, dilution, and tarnishment of their valuable trademarks as a result of Defendants' actions and seek injunctive and monetary relief.

### III. THE PARTIES

**Plaintiffs Volkswagen AG and Volkswagen Group of America, Inc.**

4. Plaintiff Volkswagen AG is a corporation organized under the laws of Germany with its principal place of business in Wolfsburg, Germany. Plaintiff Volkswagen AG is the parent of Plaintiffs Audi and Volkswagen Group of America, Inc.

5. Plaintiff Volkswagen Group of America, Inc. is a New Jersey corporation with its principal place of business in Herndon, Virginia.

6. Under agreement with Volkswagen AG, Volkswagen Group of America, Inc. polices and enforces Volkswagen AG's trademarks in the United States.

7. Volkswagen is a world famous automobile manufacturer that sells Volkswagen automobiles, genuine parts, and accessories ("Volkswagen Products") through a network of licensed Volkswagen dealerships throughout the United States. Volkswagen Products have become enormously popular, driven, in part, by Volkswagen's quality standards and innovative design. Among the purchasing public, genuine Volkswagen Products are instantly recognizable as such and symbolize high quality.

8. Volkswagen Products are distributed and sold to consumers through a network of licensed Volkswagen dealerships throughout the United States, including through several licensed Volkswagen dealerships in Illinois. Since at least as early as 1994, Volkswagen also operates websites, including vw.com, through which consumers can select genuine Volkswagen parts,

automotive accessories, and personal goods to be purchased from licensed Volkswagen dealerships. The vw.com website features proprietary Volkswagen content, images and designs.

9. Volkswagen incorporates a variety of distinctive marks in the design of its various Volkswagen Products. Volkswagen uses its trademarks in connection with the marketing of its Volkswagen Products, and is the exclusive owner of numerous federally-registered trademarks for automobiles, parts, accessories, and a long list of related services and merchandise, including the following marks which are collectively referred to as the "VW Trademarks." The VW Trademarks cover automobile parts and accessories in International Classes 011 and 012, including, but not limited to, parts and accessories for vehicle lighting.

| Registration No. | Mark |
|---|---|
| 2,835,662 | VOLKSWAGEN |
| 2,934,401 | VOLKSWAGEN |
| 2,818,615 | VW |
| 5,019,808 | VW |
| 4,177,648 | VW AG |
| 3,561,405 | ROUTAN |
| 3,431,414 | TIGUAN |
| 2,682,428 | TOUAREG |
| 2,411,743 | JETTA |
| 1,540,381 | GTI |
| 1,468,206 | PASSAT |
| 1,361,724 | GOLF |
| 1,883,332 | (VW logo) |



| | |
|---|---|
| 2,987,620 | |
| 2,849,974 | |
| 2,100,963 | |
| 3,850,256 | |
| 3,864,460 | |

10. The VW Trademarks have been used exclusively and continuously by Volkswagen for many years, and have never been abandoned. The above U.S. registrations for the VW Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. True and correct copies of the United States Registration Certificates for the above-listed VW Trademarks are attached hereto as **<u>Exhibit 1</u>**. The registrations for the VW

5

Trademarks constitute *prima facie* evidence of their validity and of Volkswagen's exclusive right to use the VW Trademarks pursuant to 15 U.S.C. § 1057(b).

**Plaintiff Audi AG**

11. Plaintiff Audi AG is a corporation organized under the laws of Germany with its principal place of business in Ingolstadt, Germany, and is a wholly owned subsidiary of Plaintiff Volkswagen AG.

12. Under agreement with Audi AG, Volkswagen Group of America, Inc. polices and enforces Audi's trademarks in the United States.

13. Audi is a world-famous automobile manufacturer that sells Audi automobiles and genuine parts and accessories ("Audi Products") through a network of licensed Audi dealerships throughout the United States. Audi Products have become enormously popular, driven, in part, by Audi's quality standards and innovative design. Among the purchasing public, genuine Audi Products are instantly recognizable as such and symbolize high quality.

14. Audi Products are distributed and sold to consumers through a network of licensed Audi dealerships throughout the United States, including through several licensed Audi dealerships in Illinois. Since at least as early as 1997, Audi also operates websites, including audiusa.com and audicollectionusa.com, through which consumers can purchase genuine Audi parts, automotive accessories, and personal goods and accessories directly from Audi. The audiusa.com and audicollectionusa.com websites feature proprietary Audi content, images and designs.

15. Audi incorporates a variety of distinctive marks in the design of its various Audi Products. Audi uses its trademarks in connection with the marketing of its Audi Products, and is the exclusive owner of numerous federally-registered trademarks for automobiles, parts,

accessories, and a long list of related services and merchandise, including the following marks which are collectively referred to as the "Audi Trademarks." The Audi Trademarks cover automobile parts and accessories in International Classes 011 and 012, including, but not limited to, parts and accessories for vehicle lighting.

| Registration No. | Mark |
|---|---|
| 4,995,364 | AUDI |
| 5,093,264 | AUDI |
| 1,283,271 | QUATTRO |
| 3,241,273 | QUATTRO |
| 3,702,707 | QUATTRO |
| 4,284,786 | (Audi four rings logo with "Audi" wordmark) |
| 2,083,439 | (Audi four rings logo with "Audi" wordmark) |
| 4,405,143 | (S logo emblem) |

16. The Audi Trademarks have been used exclusively and continuously by Audi for many years, and have never been abandoned. The above U.S. registrations for the Audi Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to

7

15 U.S.C. § 1065. True and correct copies of the United States Registration Certificates for the above-listed Audi Trademarks are attached hereto as **Exhibit 2**. The registrations for the Audi Trademarks constitute *prima facie* evidence of their validity and of Audi's exclusive right to use the Audi Trademarks pursuant to 15 U.S.C. § 1057(b).

**Plaintiffs' Trademarks and Plaintiffs' Products**

17. The VW Trademarks and Audi Trademarks are collectively referred to herein as "Plaintiffs' Trademarks."

18. The Volkswagen Products and Audi Products are collectively referred to herein as "Plaintiffs' Products."

19. Plaintiffs use Plaintiffs' Trademarks to identify their respective goods and services. Plaintiffs' Products have long been among the most popular vehicles, vehicle parts and accessories in the world and have been extensively promoted and advertised at great expense. Plaintiffs' Products are also known for their engineering, quality, and innovative designs. Because of these and other factors, the Volkswagen and Audi names and Plaintiffs' Trademarks have become famous throughout the United States.

20. Plaintiffs' Trademarks are distinctive when applied to Plaintiffs' Products, signifying to the purchaser that the products come from Plaintiffs and are manufactured to Plaintiffs' quality standards. Whether Plaintiffs manufacture the products themselves or license others to do so, Plaintiffs' Products bearing Plaintiffs' Trademarks are manufactured to high quality standards. Plaintiffs' Trademarks have achieved tremendous fame and recognition, which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with Plaintiffs' Trademarks is of incalculable and inestimable value to Plaintiffs.

21. Plaintiffs have expended substantial time, money, and other resources in developing, advertising and otherwise promoting Plaintiffs' Trademarks. As a result, products bearing Plaintiffs' Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being quality Plaintiffs' Products.

**The Defendants**

22. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell, and, on information and belief, has sold and continues to sell Counterfeit Products to consumers within the United States, including the State of Illinois.

23. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using counterfeit versions of Plaintiffs' Trademarks in the same transaction, occurrence, or series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiffs to learn Defendants' true identities and the exact interworking of their counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Plaintiffs will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

24. The success of Plaintiffs' respective brands has resulted in their significant counterfeiting. Consequently, Plaintiffs have a worldwide anti-counterfeiting program and

investigate suspicious online marketplace listings identified in proactive Internet sweeps. In recent years, Plaintiffs, or someone working in support of Plaintiffs' anti-counterfeiting program, have identified dozens of fully interactive, commercial Internet stores on various e-commerce platforms, including the Defendant Internet Stores, which were offering for sale and selling Counterfeit Products to consumers in this Judicial District and throughout the United States. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2014 was over $1.23 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

25. On information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Plaintiffs have not licensed or authorized Defendants to use any of Plaintiffs' Trademarks, and none of the Defendants are authorized retailers of genuine Plaintiffs' Products.

26. On information and belief, many Defendants also deceive unknowing consumers by using Plaintiffs' Trademarks without authorization within the content, text, and/or meta tags of their Internet stores in order to attract various search engines crawling the Internet looking for Internet stores relevant to consumer searches for Plaintiffs' Products. Other Defendants only show Plaintiffs' Trademarks in product images while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Plaintiffs' Products.

27. On information and belief, counterfeiters such as Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. On information and belief, counterfeiters such as Defendants regularly create new online marketplace accounts on various platforms using multiple fictitious names and addresses. On information and belief, such internet store registration patterns are one of many common tactics used by the counterfeiters to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

28. Even though it appears that Defendants operate under multiple fictitious names, there appear to be numerous similarities among the Defendant Internet Stores. For example, Counterfeit Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that Defendants may be related. The Defendant Internet Stores also include other notable common features, including lack of contact information, identically or similarly priced items, the same incorrect grammar and misspellings, and the use of the same text and images, including content copied from Plaintiffs' official vw.com, audiusa.com, and audicollectionusa.com websites.

29. On information and belief, counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

30. On information and belief, counterfeiters operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiffs' enforcement efforts. On information and belief, counterfeiters maintain off-shore bank accounts and regularly move funds from their PayPal accounts or other financial accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed,

analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

31. Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use Plaintiffs' Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois and, on information and belief, each Defendant has sold Counterfeit Products into the United States, including Illinois.

32. Defendants' use of Plaintiffs' Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

33. Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 32.

34. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Plaintiffs' Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. Plaintiffs' Trademarks are distinctive marks. Consumers have come to expect the highest quality from Plaintiffs' Products offered, sold or marketed under Plaintiffs' Trademarks.

35. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of Plaintiffs' Trademarks without Plaintiffs' permission.

36. Plaintiffs are the exclusive owners of their respective Plaintiffs' Trademarks. Plaintiffs' United States Registrations for Plaintiffs' Trademarks (Exhibits 1 and 2) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiffs' rights in Plaintiffs' Trademarks, and are willfully infringing and intentionally using counterfeits of Plaintiffs' Trademarks. Defendants' willful, intentional and unauthorized use of Plaintiffs' Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

37. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

38. Plaintiffs have no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputations and the goodwill of Plaintiffs' Trademarks.

39. The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

40. Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 39.

41. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the

general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiffs.

42. By using Plaintiffs' Trademarks on the Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

43. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

44. Plaintiffs have no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputations and the associated goodwill of the Volkswagen and Audi brands.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, *et seq.*)

45. Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 44.

46. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Products as those of Plaintiffs, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Plaintiffs' Products, representing that their products have Plaintiffs' approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

47. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq.*

48. Plaintiffs have no adequate remedy at law, and Defendants' conduct has caused Plaintiffs to suffer damage to their reputations and associated goodwill. Unless enjoined by the Court, Plaintiffs will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using Plaintiffs' Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Plaintiffs' Product or is not authorized by Plaintiffs to be sold in connection with Plaintiffs' Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiffs' Product or any other product produced by Plaintiffs, that is not Plaintiffs' or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under Plaintiffs' Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

    d. further infringing Plaintiffs' Trademarks and damaging Plaintiffs' goodwill; and

    e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any of Plaintiffs' trademarks, including the Plaintiffs' Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, upon Plaintiffs' request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, and Internet search engines such as Google, Bing and Yahoo (collectively, the "Third Party Providers") shall:

    a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using Plaintiffs' Trademarks;

    b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using Plaintiffs' Trademarks; and

    c. take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index;

3) That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement

of Plaintiffs' Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiffs be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of Plaintiffs' Trademarks;

5) That Plaintiffs be awarded their reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 28th day of September 2018.  Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law

*Counsel for Plaintiffs Volkswagen AG, Volkswagen Group of America, Inc., and Audi AG.*