# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| VOLKSWAGEN AG, VOLKSWAGEN GROUP OF AMERICA, INC., and AUDI AG,<br><br>       Plaintiffs,<br><br>v.<br><br>DXZ OFFICIAL STORE, et al.,<br><br>       Defendants. | Case No. 18-cv-06611<br><br>**Judge Edmond E. Chang**<br><br>**Magistrate Judge Jeffrey Cole** |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT, A STATUTORY DAMAGES AWARD, <u>AND A PERMANENT INJUNCTION</u>

# TABLE OF CONTENTS

I.  BACKGROUND ...................................................................................... 2

    A.  Plaintiffs and the AUDI Trademarks ..................................................... 2

    B.  Genuine Audi Products ........................................................................ 3

    C.  Defendant's Unlawful Activities ........................................................... 4

    D.  Procedural History ............................................................................... 5

II.  PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS ....... 6

    A.  Summary Judgment Standard ................................................................ 6

    B.  Plaintiffs Are Entitled to Summary Judgment Against Defendant on Their Trademark Infringement and Counterfeiting, False Designation of Origin, and UDTPA Claims .................................................................................. 6

        i.  *The AUDI Trademarks Are Federally Registered.* ..................................... 7

        ii.  *Defendant Advertised, Offered to Sell, and Sold Counterfeit Audi Products in Commerce without Plaintiffs' Authorization.* ......................................... 7

        iii.  *Defendant's Use of Counterfeit AUDI Trademarks Caused a Likelihood of Confusion and Infringed as a Matter of Law* ............................................. 8

III.  PLAINTIFFS ARE ENTITLED TO A STATUTORY DAMAGES AWARD AGAINST DEFENDANT FOR TRADEMARK COUNTERFEITING ........................................... 10

    A.  Statutory Damages Are Appropriate in this Case ................................. 10

    B.  A Significant Damages Award Is Warranted......................................... 12

        i.  *The Value of the AUDI Trademarks and Plaintiffs' Anti-Counterfeiting Efforts Justify a High Statutory Damages Award* .................................... 12

        ii.  *Defendant's Counterfeiting of the Audi Trademark Was Willful* ............. 13

        iii.  *Defendant Failed to Comply with Discovery Obligations, and the Full Scope of Defendant's Operations Remain Unknown.* ............................... 13

        iv.  *Defendant's Wide Exposure over the Internet Merits a Substantial Statutory Damages Award.* ..................................................................... 14

        v.  *The Requested Statutory Damages Award Must Sufficiently Deter Defendant and Similar Online Counterfeit Sellers* ................................... 15

IV.    PLAINTIFFS ARE ENTITLED TO PERMANENT INJUNCTIVE RELIEF ................ 16

V.     PLAINTIFFS ARE ENTITLED TO ATTORNEY'S FEES AND COSTS ..................... 16

VI.    CONCLUSION ............................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................ 6

*AutoZone, Inc. v. Strick*,
    543 F.3d 923 (7th Cir. 2008) ........................................... 9

*Barbecue Marx, Inc. v. Ogden, Inc.*,
    235 F.3d 1041 (7th Cir. 2000) ......................................... 7

*Bulgari, S.p.A. v. Zou Xiaohong, et al.*,
    2015 U.S. Dist. LEXIS 140606 (N.D. Ill. Oct. 15, 2015) ..................................... 1, 13, 15

*Chi-Boy Music v. Charlie Club*,
    930 F.2d 1224 (7th Cir. 1991) ....................................... 11

*Door Sys. v. Pro-Line Door Sys.*,
    83 F.3d 169 (7th Cir. 1996) ........................................... 8

*H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co., et al.*,
    2017 U.S. Dist. LEXIS 207613 (N.D. Ill. Dec. 18, 2017) ............................... 1

*Lorillard Tobacco Co. v. J.J. Shell Food Mart, Inc.*,
    No. 03-cv-5506, 2005 U.S. Dist. LEXIS 26626 (N.D. Ill. Oct. 27, 2005) ...................... 11

*Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.*, No. 03-cv-4986,
    2004 U.S. Dist. LEXIS 22563 (N.D. Ill. Nov. 5, 2004) ..................................... 12, 13, 14

*Luxottica USA LLC v. The Partnerships, et al.*,
    2015 U.S. Dist. LEXIS 78961 (N.D. Ill. June 18, 2015) ............................................ 1, 14

*Luxottica USA LLC v. The Partnerships, et al.*,
    2017 U.S. Dist. LEXIS 29999 (N.D. Ill. Mar. 2, 2017) ............................................. 1, 15

*Microsoft Corp. v. Rechanik*,
    249 F. App'x 476 (7th Cir. 2007) .................................... 8

*Monster Energy Company v. Meng Chun Jing, et al.*,
    2015 U.S. Dist. LEXIS 86956 (N.D. Ill. July 6, 2015) ............................................ 9, 13

*NBA Properties, Inc., et al. v. Yan Zhou, et al.*,
    2017 U.S. Dist. LEXIS 148971 (N.D. Ill. Sept. 14, 2017) ............................... 1

*Packaging Supplies, Inc. v. Harley-Davidson, Inc.*,
    2011 WL 1811446 (N.D. Ill. May 12, 2011) ................................... 7

*Packman v. Chi. Tribune Co.*,
    267 F.3d 628 (7th Cir. 2001) ............................................................. 6

*Phillip Morris USA Inc. v. Marlboro Express*,
    No. 03-cv-1161, 2005 U.S. Dist. LEXIS 40359 (E.D.N.Y. Aug. 26, 2005) .................. 15

*River Light V, L.P., et al. v. Zhangyali, et al.*,
    2016 U.S. Dist. LEXIS 111301 (N.D. Ill. Aug. 22, 2016) .............................. 1

*Sands, Taylor & Wood v. Quaker Oats Co.*,
    34 F.3d 1340 (7th Cir. 1994) ........................................................... 11

*Sara Lee v. Bags of New York, Inc.*,
    36 F. Supp. 2d 161 (S.D.N.Y. 1999) .................................................... 11

*Tobinick v. Scripps Clinic Med. Group*,
    81 Fed. Appx. 677 (9th Cir. 2003) ..................................................... 11

*Tony Jones Apparel, Inc. v. Indigo USA, LLC*,
    2005 U.S. Dist. LEXIS 14649 (N.D. Ill. July 11, 2005) ................................ 17

**Statutes**

15 U.S.C. § 1057(b) ........................................................................ 7

15 U.S.C. § 1114(1) ........................................................................ 6

15 U.S.C. § 1116(a) ....................................................................... 16

15 U.S.C. § 1117(b) ................................................................... 16, 17

15 U.S.C. § 1117(c) ................................................................... 10, 11

15 U.S.C. § 1117(c)(1) .................................................................... 10

15 U.S.C. § 1117(c)(2) ............................................................... 10, 15

15 U.S.C. § 1125(a)(1) ..................................................................... 6

15 U.S.C. § 1127 ........................................................................... 8

15 U.S.C. §1125(c)(1) ..................................................................... 12

17 U.S.C. § 504(c) ........................................................................ 11

815 Ill. Comp. Stat. 510/2(a) .............................................................. 7

Fed. R. Civ. P. 56(a) ...................................................................... 6

## MEMORANDUM

Plaintiffs Volkswagen Group of America, Inc. and Audi AG (together or individually, "Plaintiffs") submit this Memorandum in Support of their Motion for Summary Judgment on all claims against Defendant iman365-usa ("Defendant"),[1] a Statutory Damages Award, and a Permanent Injunction against Defendant.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiffs move for entry of summary judgment against Defendant for federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), and violation of the Illinois Uniform Deceptive Trade Practices Act ("UDTPA") (Count III). Further, Plaintiffs request a statutory damages award of at least $100,000 from Defendant and mandatory attorney fees and costs.[2] *See See H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co., et al.,* 2017 U.S. Dist. LEXIS 207613 (N.D. Ill. Dec. 18, 2017) (awarding $150,000 for three alleged counterfeit sales); *NBA Properties, Inc., et al. v. Yan Zhou, et al.,* 2017 U.S. Dist. LEXIS 148971 (N.D. Ill. Sept. 14, 2017) (awarding $50,000 per counterfeit mark for alleged minimal sales without sales records); *Luxottica USA LLC v. The Partnerships, et al.,* 2017 U.S. Dist. LEXIS 29999 (N.D. Ill. Mar. 2, 2017) (awarding $100,000 for alleged $62 in sales); *River Light V, L.P., et al. v. Zhangyali, et al.,* 2016 U.S. Dist. LEXIS 111301 (N.D. Ill. Aug. 22, 2016) (awarding $100,000 for alleged minimal sales); *Bulgari, S.p.A. v. Zou Xiaohong, et al.,* 2015 U.S. Dist. LEXIS 140606 (N.D. Ill. Oct. 15, 2015) (awarding $100,000 for alleged minimal sales); *Luxottica USA LLC v. The Partnerships, et al.,* 2015 U.S. Dist. LEXIS 78961 (N.D. Ill. June 18, 2015) (awarding $150,000 for alleged $800 in revenue).

---

[1] This case remains pending against only Defendant iman365-usa, with all other claims involving other parties having been resolved by way of settlement or Default Judgment entered December 13, 2018 [74].

[2] Plaintiffs reserve the right to seek other relief sought in their Amended Complaint [10], including actual damages and an accounting of Defendant's profits, pending the outcome of this Motion.

# I. BACKGROUND

## A. Plaintiffs and the AUDI Trademarks

Plaintiff Volkswagen AG is the parent of Plaintiffs Audi AG and Volkswagen Group of America, Inc. [PSF 1]. Plaintiff Volkswagen Group of America, Inc. is a New Jersey corporation with a principal place of business in Herndon, Virginia. [PSF 2]. Plaintiff Audi AG is a corporation organized under the laws of Germany with its principal place of business in Ingolstadt, Germany, and is a wholly owned subsidiary of Plaintiff Volkswagen AG. [PSF 3]. Plaintiff Volkswagen Group of America, Inc. polices and enforces Plaintiff Audi AG's trademarks in the United States. [PSF 2].

Audi AG is a world-famous automobile manufacturer that sells Audi automobiles and genuine parts and accessories ("Audi Products") through a network of licensed Audi dealerships throughout the United States, including in Illinois. [PSF 10]. Plaintiff Audi AG holds U.S. federal trademark registrations for its trademarks, including U.S. Registration Nos. 2,083,439 for  and 5,093,264 for the "AUDI" word mark, covering, among other goods, automobiles and structural parts therefor, and lighting apparatus for vehicles (the "AUDI Trademarks"). [PSF 16]. The U.S. Registrations for the AUDI Trademarks are valid, subsisting, and in full force and effect, and U.S. Registration No. 2,083,439 is incontestable pursuant to 15 U.S.C. § 1065. [PSF 17]. The AUDI Trademarks have been used exclusively and continuously by Plaintiffs and have never been abandoned. [PSF 18]. Among consumers and the public, Audi Products are widely recognized and exclusively associated with high-quality products sourced from Plaintiffs and are instantly recognizable as such. [PSF 19]. Plaintiffs have continuously and actively enforced their trademark rights, including filing

trademark infringement and counterfeiting lawsuits.  [PSF 20].  Plaintiffs have a worldwide anti-counterfeiting program and regularly investigate suspicious websites and online marketplace listings.  [PSF 20].

### B. Genuine Audi Products

Audi Products have long been among the most popular vehicles, vehicle parts and accessories in the world and have been extensively promoted and advertised at great expense. [PSF 13].  According to Audi's 2017 *Annual Financial Report*, Audi's distribution costs, which are an amalgamation of "labour and material costs for marketing and sales promotion, advertising, public relations activities and outward freight, as well as depreciation attributable to sales organization" totaled approximately EUR 5,297,000,000 (approximately USD $ 6,000,000,000) for fiscal year 2017.  [PSF 14].  The same report additionally values Audi's brand names at EUR 459,000,000 (approximately USD $ 520,000,000) for the fiscal year 2017, utilizing non-amortization accounting procedures due to the "indefinite useful life" of the brands.  [PSF 14].

Audi Products are also known for their engineering, quality, and innovative designs. [PSF 12].  In 2018 alone, the Audi Q7 was selected to *Car and Driver*'s "10 Best Mid-Size Luxury Trucks and SUVs" list (for the second consecutive year); Audi was awarded the "Most Innovative Automaker" and "Most Innovative Infotainment System" awards at the Consumer Electronics Show; the Audi A4 was named "Luxury Car of the Year" by Cars.com; the Audi A3 was named "Best Luxury Small Car for the Money" by *U.S. News & World Report*; the Audi Q7 was awarded "Best New Car" in the mid-size luxury SUV category by *Good Housekeeping*; the Audi Q5 was named to *Autotrader*'s list of the "10 Best Car Interiors;" the Audi A8 won "World Luxury Car 2018" at the World Car Awards; the Audi Q5 and Q6 were named "2018 Best Cars for Families" in their respective classes by *U.S. News & World Report*; and the Audi Q5 and Q7 won Kelley

Blue Book Best Buy Awards." [PSF 15]. Because of these and other factors, the AUDI Trademarks have become famous throughout the United States.

### C. Defendant's Unlawful Activities

Defendant iman365-usa is an eBay store located at the URL ebay.com/usr/iman365-usa ("Defendant's eBay Store"). [PSF 5]. Defendant advertised, offered for sale, and sold the product shown in Figures 1 and 2 below on Defendant's eBay Store (the "iman365-usa Product"). [PSF 21].



*Figure 1*

Defendant used the AUDI word mark for the above listing of the iman365-usa Product. [PSF 22]. Additionally, the iman365-usa Product images showed the product projecting an image of the AUDI Trademarks. [PSF 22]. Defendant advertised, offered for sale, and sold the iman365-usa Product for $ 15.99, and accepted payment for the iman365-usa Product via PayPal. [PSF 23]. Defendant shipped the iman365-usa Product to Illinois. [PSF 24]. When activated, the iman365-usa Product projects an image of the AUDI Trademarks. [PSF 24]. An image of the projection from the iman365-usa Product as received is shown below in Figure 2.



*Figure 2*

Plaintiffs examined images of the iman365-usa Product. [PSF 27]. Plaintiffs have not licensed or authorized Defendant to use the AUDI Trademarks. [PSF 28]. Defendant is not an authorized retailer of genuine Audi Products. [PSF 28]. Plaintiffs concluded that the iman365-usa Product was not a genuine Audi Product, and was a counterfeit product. [PSF 29]. The iman365-usa Product is also referred to herein as the "Counterfeit Audi Product."

Information provided by PayPal, Inc. indicates that Defendant's PayPal account linked to the email address at 523526251@qq.com ("Defendant's PayPal Account") has a total restrained balance of approximately $ 50,492 USD, but has received over $ 137,966 USD. [PSF 44].

### D. Procedural History

Plaintiffs filed this action on September 28, 2018 against Defendant. [1]. This Court granted a Temporary Restraining Order ("TRO") [26] against Defendant on October 11, 2018, finding that Plaintiffs demonstrated, among other things, a likelihood of success on their claims. This TRO was extended [32] and subsequently converted to a Preliminary Injunction [43] on November 8, 2018. [43]. Defendant filed an Answer to Plaintiffs' Amended Complaint on November 28, 2018, and an Amended Answer on January 11, 2019. [63], [79].

## II.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS

### A.    Summary Judgment Standard

A district "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The district court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001).  A genuine dispute as to any material fact only exists if a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B.    Plaintiffs Are Entitled to Summary Judgment Against Defendant on Their Trademark Infringement and Counterfeiting, False Designation of Origin, and UDTPA Claims

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce, any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake or to deceive." 15 U.S.C. § 1114(1).  Section 43(a) of the Lanham Act further imposes liability upon a defendant who "on or in connection with any goods or services ... uses in commerce any ... false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact, which is likely to cause confusion or to cause mistake, or to deceive as to the ... origin, sponsorship, or approval of his or her goods ... by another person."  15 U.S.C. § 1125(a)(1).  Under the UDTPA, a defendant is liable for, among other things, (1) passing off goods as those of another; (2) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods; or (3) causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with another.  815 Ill. Comp.

6

Stat. 510/2(a).  Plaintiffs' Section 43(a) of the Lanham Act and UDTPA claims involve the same elements.  *See Packaging Supplies, Inc. v. Harley-Davidson, Inc.*, 2011 WL 1811446, at *5 (N.D. Ill. May 12, 2011).

To succeed on a federal trademark infringement claim, Plaintiffs must establish that they have a protectable trademark and that Defendant's misuse of the trademark creates a likelihood of confusion among consumers.  *Barbecue Marx, Inc. v. Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000).  Plaintiffs satisfy all requirements to successfully bring a trademark infringement and counterfeiting claim.

### i.   The AUDI Trademarks Are Federally Registered.

Regarding the first element, Plaintiff Audi AG holds U.S. federal trademark registrations for the AUDI Trademarks.  [PSF 16].  The U.S. Registrations for the AUDI Trademarks are valid, subsisting, and in full force and effect, and U.S. Registration No. 2,083,439 is incontestable pursuant to 15 U.S.C. § 1065.  [PSF 17].  The registrations for these trademarks constitute *prima facie* evidence of their validity and of Plaintiffs' exclusive right to use these trademarks pursuant to 15 U.S.C. § 1057(b).   As such, there can be no genuine issue of material fact as to whether Plaintiffs have valid and exclusive rights in the AUDI Trademarks.

### ii.   Defendant Advertised, Offered to Sell, and Sold Counterfeit Audi Products in Commerce without Plaintiffs' Authorization.

Defendant advertised, offered for sale, and sold products using the AUDI Trademarks on the Defendant eBay Store.  [PSF 21-24].  Defendant is not an authorized retailer of genuine Audi Products, and the products advertised, offered for sale, and sold using the AUDI Trademarks on the Defendant eBay Store are not genuine Audi products.  [PSF 28, 29].

### iii. Defendant's Use of Counterfeit AUDI Trademarks Caused a Likelihood of Confusion and Infringed as a Matter of Law

Defendant used unauthorized marks which are identical with, or substantially indistinguishable from, the registered AUDI Trademarks (Reg. Nos. 2,083,439 and 5,093,264), and thus are counterfeit. 15 U.S.C. § 1127 (definition of "counterfeit"). *See* Figures 1, 2, *supra*; [PSF 21, 24]. Defendant used the AUDI Trademarks in connection with the advertising, offering for sale, and sale of unauthorized goods. 15 U.S.C. § 1114(1)(a) (prohibiting the use in advertising of any goods or services on or in connection with a protected mark).

"[I]f the evidence is so one-sided that there can be no doubt about how the question should be answered," whether likelihood of confusion exists may be resolved on summary judgment. *Id*. (citing *Door Sys. v. Pro-Line Door Sys.*, 83 F.3d 169, 173 (7th Cir. 1996)). The Seventh Circuit has held that where, as here, "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007); *see also NBA Props., Inc., et al. v. Yan Zhou, et al.*, 2017 U.S. Dist. LEXIS 148971, at *5 (N.D. Ill. Sept. 14, 2017) (internal citation omitted). Accordingly, the Court can presume a likelihood of confusion from Defendant's use of the AUDI Trademarks.

The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and, (7) the intent of the defendant to "palm off" its products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir.

2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

The iman365-usa Product was advertised using marks identical to the AUDI Trademarks. [PSF 16, 21-22]. Both Plaintiffs and Defendant advertise products using the AUDI Trademarks to the same consumers, targeting those consumers searching for genuine Audi Products. [PSF 21-24]. Thus, consumers searching for genuine Audi Products (who are diverse with varying degrees of sophistication) are likely to have difficulty distinguishing genuine Audi Products from Defendant's Counterfeit Audi Products. This is particularly true since Defendant's Counterfeit Audi Products were advertised, offered for sale, and sold on the Internet [PSF 21], and consumers could not inspect the physical products. Further, Defendant was selling its product for $15.99. [PSF 23]. Courts "assume that the more widely accessible and inexpensive the products and services, the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases.'" *Monster Energy Co. v. Meng Chun Jing*, 2015 U.S. Dist. LEXIS 86956, at *7-8.

Plaintiffs do not need to prove actual consumer confusion; rather they only need to show a likelihood of confusion exists, particularly given the compelling evidence that Defendant is attempting to "palm off" its goods as genuine Audi Products by using the AUDI Trademarks. *CAE, Inc. v. Clean Air Eng'g, Inc*., 267 F.3d 660, 685 (7th Cir. 2001). In addition to point-of-sale confusion about the source of products sold on the Defendant Internet Store, the Seventh Circuit has recognized that the Lanham Act's protections also extend to post-sale confusion of potential customers. *Id.* at 683. Post-sale confusion refers to a situation in which, for example, a potential customer sees a product bearing the infringing label used by others and mistakenly attributes the product to the brand owner, thereby influencing his buying decision, either positively or negatively.

*Id.* That association also constitutes infringement of the AUDI Trademarks. *Id.* Here, because of the Defendant's unlawful use of the well-known AUDI Trademarks, that association is likely to result.

Accordingly, Defendant is liable for trademark counterfeiting as a matter of law.

## III. PLAINTIFFS ARE ENTITLED TO A STATUTORY DAMAGES AWARD AGAINST DEFENDANT FOR TRADEMARK COUNTERFEITING

Plaintiffs seek to recover an award of statutory damages of $100,000 ($50,000 per mark counterfeited by the Defendant) as authorized by 15 U.S.C. § 1117(c) for Defendant's advertising, offering for sale, and sale of Counterfeit Audi Products. This amount is reasonable in light of prior awards in the range of $100,000 to $1,000,000 with similar relevant factors, including: (1) Defendant's willful infringement; (2) efforts taken by Plaintiffs to promote, protect and enhance the AUDI Trademarks; (3) wide exposure over the Internet; (4) deterrence of the Defendant; and (5) deterrence of similarly situated online counterfeit sellers.

### A. Statutory Damages Are Appropriate in this Case

15 U.S.C. § 1117(c) provides that a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, 15 U.S.C. § 1117(c)(2) provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2). Although 15 U.S.C. § 1117(c) contains the dollar range for possible statutory damage awards, the only guidance provided by the statute for how to determine a damage award within the statutory dollar range is "as the court considers just." 15 U.S.C. § 1117(c). Statutory damages under 15 U.S.C. § 1117(c) are a "matter within the sole province of the court." *Tobinick v. Scripps Clinic*

*Med. Group*, 81 Fed. Appx. 677, 679 (9th Cir. 2003). Courts interpreting 15 U.S.C. § 1117(c) have

analogized case law applying the statutory damage provision of the Copyright Act contained in 17

U.S.C. § 504(c). *See Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, at *10; *Sara Lee v.*

*Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999).

The Seventh Circuit's standard for awarding statutory damages for copyright infringement

under 17 U.S.C § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th

Cir. 1991). Under the *Chi-Boy* standard, a court awarding statutory damages is "not required to

follow any rigid formula," but instead "enjoys wide discretion." *Id*. In computing the award

amount, a court may consider factors such as "the difficulty or impossibility of proving actual

damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent."

*Id*. Courts in this district have also considered the significant value of a plaintiff's brand and the

efforts taken to protect, promote and enhance that brand in determining the appropriate dollar

figure for the award. *Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, at *16.

An award of statutory damages serves dual interests in that it is remedial in nature, but also

intended to protect an important public interest. *Sands, Taylor & Wood v. Quaker Oats Co.,* 34

F.3d 1340, 1347-48 (7th Cir. 1994). Because damages inquiries under Section 1117(c) consider

both punitive and compensatory considerations, "there is no necessary mathematical relationship

between the size of such an award and the extent or profitability of the defendant's wrongful

activities." *Sara Lee*, 36 F. Supp. 2d at 165. Thus, courts have looked beyond restitution of profit

and restoration of injury to award damages, holding that deterrence of future infringement by the

defendant and others situated like him is an important factor. *Lorillard Tobacco Co. v. J.J. Shell*

*Food Mart, Inc.,* 2005 U.S. Dist. LEXIS 26626, at *16 (N.D. Ill. Oct. 27, 2005). Courts have also

held that damages awards limited to lost profits would have little to no deterrent effect on future

violations – "a counterfeiter must fear more than just having to turn over his ill-gotten gains to the rightful owners." *See Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, at *17. Given the broader economic losses and harm to the job market caused by counterfeiting, coupled with the possible dangers to consumers who are tricked into purchasing low quality, counterfeit products over the Internet, it is important to both penalize defendants and try to deter future violations. *Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.*, 2004 U.S. Dist. LEXIS 22563, at *18 (N.D. Ill. Nov. 5, 2004).

**B.     A Significant Damages Award Is Warranted**

> *i.     The Value of the AUDI Trademarks and Plaintiffs' Anti-Counterfeiting Efforts Justify a High Statutory Damages Award*

In determining an appropriate damage award, this Court should be guided by the *Lorillard* case and consider the "significant value of [the Audi] brand and the efforts taken to protect, promote and enhance that brand." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *16. Audi Products have been extensively promoted and advertised at great expense. [PSF 13, 14]. The Audi brand is a global success, as are its innovative and award winning products. [PSF 12-15]. Among the purchasing public, Audi Products are instantly recognizable as such. [PSF 12]. Because of these and other factors, the AUDI Trademarks are famous marks as that term is used in 15 U.S.C. §1125(c)(1).

Plaintiffs have continuously and actively enforced their trademark rights, including filing trademark infringement and counterfeiting lawsuits. [PSF 20]. In recent years, Plaintiffs have enforced against hundreds of marketplace listings on platforms such as eBay, AliExpress, Alibaba, Amazon, and Wish.com. [PSF 20]. Thus, Plaintiffs' request for a high statutory damages award should be given favorable consideration in view of the value of the Audi brand and the extensive steps being taken to protect, promote, and enhance it. *See Monster Energy Company*, 2015 U.S.

Dist. LEXIS 86956, at *11; *Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *7-8 (N.D. Ill. June 18, 2015).

> ## ii.   *Defendant's Counterfeiting of the Audi Trademark Was Willful*

"Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *19-20.  Knowledge need not be proven directly, but can be inferred from a defendant's conduct.  *Id*. at *20.

The Court can infer from Defendant's conduct that Defendant had knowledge that their conduct constituted infringement.  First, Defendant's use of the AUDI Trademarks had to be willful, since products bearing the AUDI Trademarks are widely recognized and associated exclusively with Plaintiffs, and the marks Defendant used are identical to the AUDI Trademarks. *See Monster Energy Company*, 2015 U.S. Dist. LEXIS 86956, at *10; *Bulgari, S.p.A.*, 2015 U.S. Dist. LEXIS 140606, at *6.  Defendant's only identified product for determining whether a supplier or manufacturer is licensed or authorized to sell branded products is a statement that Defendant "just found the goods through 1688, and then contacted the seller to deliver [the goods]."  [PSF 42].  To date, Defendant has not produced any documents indicating Defendant has procedures in place to detect and prevent the sale of counterfeit goods.  [PSF 43].  As such, Defendant's counterfeiting of the AUDI Trademarks had to be willful, or at a minimum, shows a reckless disregard for Plaintiffs' trademark rights.

> ### iii.   *Defendant Failed to Comply with Discovery Obligations, and the Full Scope of Defendant's Operations Remain Unknown.*

Defendant has failed to produce relevant records and documents responsive to written discovery requests made by Plaintiffs.  For example, Defendant has not produced complete sales records related to Defendant's eBay Store.  [PSF 37, 38].  Defendant has produced limited images

of a handful of the products sold on Defendant's eBay Store, without any context, item titles, and sales numbers relating to these images. [PSF 39]. Defendant has only identified a single U.S.-based financial account linked to the email address at 523526251@qq.com, and a credit card linked to China Merchants Bank. [PSF 40]. While Defendant claims to not operate any other Internet stores, Defendant's eBay Store additionally advertises on at least BuyCheapr.com. [PSF 40]. As such, the full scope of Defendant's operations, including its sales records, remain unknown.

Regardless, it is Plaintiffs' election whether to pursue actual damages or statutory damages, regardless of what information is allegedly available. *Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.*, 2004 U.S. Dist. LEXIS 22563, *16-17 (N.D. Ill. Nov. 5, 2004) ("Congress has provided the option of statutory damages . . . and Lorillard has elected to pursue that remedy…. Furthermore, the actual damages incurred by Lorillard are of lesser concern in determining a proper damage award because Congress' decision to allow statutory damages under 15 U.S.C. § 1117(c) was in direct recognition of the fact that the calculation of the actual damages may be difficult, if not impossible, to determine."). In addition, while courts may look to the size and scope of a defendant's operations to determine a baseline for damages, "there is no necessary mathematical relationship between the size of a statutory damages award and the extent or profitability of the defendant's wrongful activities." *Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *6 (internal quotations omitted).

>       iv.    *Defendant's Wide Exposure over the Internet Merits a Substantial Statutory Damages Award.*

Defendant's ability to reach a vast customer base by willfully advertising, offering for sale, and selling Counterfeit Audi Products over the Internet on the eBay marketplace platform merits a substantial statutory damages award. Defendant can reach a large base of active buyers through the eBay platform. As of December 31, 2017, the eBay marketplace had more than 170 million

active buyers. [PSF 30]. Courts in this District have recognized the ability for online marketplace sellers to reach a vast customer base and factored this wide market exposure into the statutory damages calculation. *See Monster Energy Company*, 2015 U.S. Dist. LEXIS 86956, at *11 (holding that AliExpress "is a busy website that provides the potential to reach a vast customer base."); *Luxottica USA LLC v. The Partnerships, et al.*, 2017 U.S. Dist. LEXIS 29999, at *11-12 (Mar. 2, 2017 N.D. Ill.) (summary judgment and awarding $100,000 in statutory damages "because [defendant] advertised [counterfeit goods] on the internet, allowing for distribution far greater than if it sold the hats in a brick-and-mortar store.").

> v.   *The Requested Statutory Damages Award Must Sufficiently Deter Defendant and Similar Online Counterfeit Sellers*

The remedy imposed must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands, Taylor & Wood,* 34 F.3d at 1348. In *Phillip Morris USA Inc. v. Marlboro Express*, the Court stated that due to, "the size of the potential profit given the quantities of [counterfeit goods] involved, and the need for a substantial deterrent to future misconduct by defendants and other counterfeit traffickers ... plaintiff is entitled to the maximum statutory award under 15 U.S.C. § 1117(c)(2)." 2005 U.S. Dist. LEXIS 40359, at *28 (E.D.N.Y. Aug. 26, 2005). *See also Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *8.

To reach global consumers, counterfeiters advertise, offer for sale, and sell their products via social media platforms and popular e-commerce sites, like the eBay platform used by the Defendant. [PSF 21]. In the 2017 fiscal year alone, U.S. government seizures of counterfeit goods totaled more than $1.2 billion. [PSF 31]. China and Hong Kong remained the primary sources of counterfeit and pirated goods seized, accounting for more than 78 percent of all seizures. [PSF 32]. In addition, a February 2017 report commissioned by Business Action to Stop Counterfeiting

and Piracy (BASCAP) and the International Trademark Association (INTA) entitled *The Economic Impacts of Counterfeiting and Piracy* included findings that counterfeit and pirated products account for an estimated $850 billion in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue, of more than $125 billion every year. [PSF 33]. BASCAP additionally expects these figures to increase each year. [PSF 34].

Considering the above factors, including the strength of the AUDI Trademarks, Plaintiffs' substantial anti-counterfeiting efforts, Defendant's willful infringement, that Defendant has the ability to reach a vast audience through its Internet store, and the need for deterrence of both Defendant and other sellers, Plaintiffs respectfully request the Court's entry of an award of $50,000 for each of the marks counterfeited by Defendant, for a total award of $100,000.

## IV.     PLAINTIFFS ARE ENTITLED TO PERMANENT INJUNCTIVE RELIEF

In addition to the foregoing relief, Plaintiffs respectfully request the entry of a permanent injunction enjoining Defendant from advertising, offering for sale, and/or selling Counterfeit Audi Products or otherwise violating Plaintiffs' rights in the AUDI Trademarks. 15 U.S.C. § 1116(a); *See also H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co.,* 2017 U.S. Dist. LEXIS 207613, *14-15 (N.D. Ill. Dec. 18, 2017) (granting plaintiff's request for a permanent injunction barring defendant from advertising, offering for sale, and selling counterfeit products).

## V.      PLAINTIFFS ARE ENTITLED TO ATTORNEY'S FEES AND COSTS

Pursuant to 15 U.S.C. § 1117(b), in a case involving use of a counterfeit mark, the court shall, unless it finds extenuating circumstances, award a reasonable attorney's fee if the violation consists of intentionally using a mark, knowing such mark is a counterfeit mark, in connection with the sale, offering for sale, or distribution of goods. 15 U.S.C. § 1117(b). *Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *14; *Monster Energy Company*, 2015

U.S. Dist. LEXIS 86956, at *13; *Bulgari, S.P.A.,* 2015 U.S. Dist. LEXIS 140606, at *9-10.  Thus, if a defendant is liable because it was willfully blind, or because it knew the products it was selling were counterfeit, an award of attorney's fees is mandatory under § 1117(b), absent extenuating circumstances.  *Tony Jones Apparel, Inc. v. Indigo USA, LLC,* 2005 U.S. Dist. LEXIS 14649, at *31-33 (N.D. Ill. July 11, 2005).  Plaintiffs respectfully request entry of an award of their reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1117(a) and (b) because Defendant knowingly and willfully advertised, offered for sale, and sold Counterfeit Audi Products.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an order granting summary judgment against Defendant for willful federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), and violation of the Illinois Uniform Deceptive Trade Practices Act (Count III).  Plaintiffs request that this Court award statutory damages of at least one hundred thousand dollars ($100,000) from the Defendant, enter a permanent injunction prohibiting Defendant from advertising, offering for sale, and/or selling products using the AUDI Trademarks, and award Plaintiffs their reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1117(a) and (b).

Dated this 5th day of February 2019.	Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of February 2019, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system. The CM/ECF system will send a "Notice of E-Filing" to the attorneys of record in this case.

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law

*Attorneys for Plaintiffs*